Saloy et al. vs. City of New Orleans.

## No. 8102.

### B. SALOŸ ET AL. VS. CITY OF NEW ORLEANS.

The City of New Orleans cannot be compelled to accept ten mills in full payment of the city taxes of 1880, under the limitation fixed by Article 209 of the Constitution of 1879.

The power of taxation possessed by said City is not confined to that granted by that Constitution.

Her power of taxation required to meet her antecedent contract obligations, is not derived from, or controlled by, the State Constitution. It was derived from valid legislative authority existing at the time of such contracts, which formed part of them, and, therefore, rights acquired under them are protected by the Constitution of the United States, independently of the will of the State.

It was not the intention of the Constitution of 1879 to deprive the City of the right to apply such portion of the ten mills to the support of the city government as might be necessary, and thereby throw her into a state of anarchy.

The Decision in Shields vs. Pipes, 31 An. 765, a parallel case, commented upon and affirmed.

The Constitution, laws and treaties of the United States are as much part of the laws of every State as its own local laws and Constitution, and the duty of this Court is to administer all the laws of the land, those of the United States as well as those of the State of Louisiana.

There exists a wholesome comity between the highest Federal tribunal and the highest Courts of the several States, under which the former accepts as binding upon it the construction placed by the latter upon their own Constitutions and statutes; and it is justly due that the latter should pay equal regard to the adjudications of the former.

In all questions involving the meaning and effect of the Federal Constitution, the Supreme Court of the United States is the final arbiter, whose Decisions this Court must accept as the highest authority.

The Supreme Court of the United States, in the recent case of Meriweather, Receiver of Memphis, vs. Garrett et al., has not reversed or modified the principles previously recognized in repeated Decisions, that where a statute authorized a municipal corporation to issue bonds and to exercise the power of taxation to pay them, and persons bought said bonds, this power of taxation is part of the contract and cannot be withdrawn until the bonds are paid. This Decision in the Memphis case closely examined.

Condemnation of the theory, that taxes levied under the *Mandamus* of a Court constitute judicial taxation.

An Exception to the right of Defendant to reconvene, should be urged *in limine*.

A party cannot take the chances of a decision in his favor on a voluntary submission of the merits of the cause, and then escape the effect of an adverse judgment upon such a plea.

APPEAL from the Civil District Court, parish of Orleans. *Tissot, J.*

---

*R. H. Marr* for Plaintiffs and Appellees.

First—By former laws municipal taxes, of the City of New Orleans, were "*due and payable*" from and after certain fixed dates: they were "*exigible*" only from and after certain fixed, subsequent dates. Act of 1870, Ex. Sess., No. 7, p. 39, sections 18, 21; Act of 1871, No. 48, p. 147, section 9; Act of 1874, No. 41, p. 78.

Second—Taxes due the City of New Orleans bore interest only from and after the date at which they were "exigible," not from the date at which they were "due and payable." Act of 1871, p. 147, section 9.

Third—Act No. 41, of 1874, changed the date at which City taxes became "exigible." It thereby repealed section 9, of Act No. 48, of 1871, which allowed ten per cent. interest from and after the 31st July.

Saloy et al, vs. City of New Orleans.

Fourth—The Constitution of 1879, Articles 210, 211, 218, abrogated all laws authorizing suits for taxes; and made all taxes "collectible," that is, "due and payable," in the year in which they are assessed. They are "exigible" only from and after the expiration of the year; and they cannot bear interest from a date anterior to that at which they are made "exigible." Act of 1880, No. 77, sections 6, 9.

Fifth—In a suit between the taxpayer and the City, the rights of antecedent contract obligees cannot be set up *vicariously;* and they cannot be passed upon by the Court. Gilman vs. City of Sheboygan, 2 Black, 513.

Sixth—No tax can be levied or collected independently of the will of the State; or otherwise than under the authority of the law-making power. Meriwether vs. Garrett, the Memphis case, and authorities cited by the Court.

Seventh—Municipal Corporations are mere creatures of the State; and the taxing power conferred on them may be abridged, or withdrawn entirely, by the Legislature, at its will and pleasure, at any time. Same case and authorities.

Eighth—Taxes levied by a Municipal Corporation, under valid legislative authority, existing and in force at the date of its antecedent contract obligations, may be altered, or postponed, or released, by the Legislature, at its will and pleasure, at any time before they are enforced. Same case and authorities.

Ninth—The Constitution is the highest act of law-making power in the State; and it is law throughout the State, in all the departments and subdivisions of the State.

*B. R. Forman* and *J. B. Eustis* on the same side.

*Saml. P. Blanc,* Assistant City Attorney, for Defendant and Appellant.

First—That Art. 209 is prospective in operation, and does not, therefore, affect the levy of fifteen mills, made December 23rd, 1879, for City taxes of 1880.

Second—That it was lawful and the duty of the Council to prepare its budgets of expenditures and receipts, and to levy taxes in December, 1879, for the "*ensuing year.*"

Third—That the adoption of the budgets and levy of the taxes, December 23rd, 1879, constituted an appropriation of the latter to the items of the detailed expenses from that moment; and from the same time created and fixed an obligation on the taxpayers to pay the taxes assessed and levied for 1880.

Fourth—That, if the ten mills limitation of Art. 209 applies to taxes of 1880, the entire amount must be given the City expenses before devoting any part thereof to the payment of anterior debt contracts.

Fifth—That if the ten mills are required for City expenses, debt contracts existing before the limitation was imposed, must be paid from a levy in excess of the ten mills, where such contracts require the levy of taxes and are protected by the Constitution of the United States.

Sixth—That, as ten mills were required for City expenses and five mills for the bonded and other contracts, the entire levy of fifteen mills must be maintained.

Seventh—That nothing in the Constitution, nor in Act No. 77, of 1880, require the abolition of the assessment of 1879 for City taxation.

Eighth—That Act No. 77, of 1880, does not regulate or apply to the collection of City taxes.

Ninth—That, if the terms of Act 77 could be regarded as including the City, the act would, to that extent, be unconstitutional : 1st, because it would contain more than one object, and because that object is not set forth in the title; 2nd, because it would be contrary to Act 47, as a local law enacted without notice; 3rd, because it would postpone the payment of taxes and the assessment, contrary to commands of Arts. 46 and 212, and would thus impair the obligations of contracts, contrary to the Constitution of. the United States.

The opinion of the Court was delivered by

Todd, J. The plaintiffs, residents and taxpayers of the City of New

Orleans, seek by this suit to compel the city, through its proper officer, to receive, in full discharge of their taxes, ten mills on the dollar of the valuation put on their property for the purposes of State taxation for the year 1880, and to have declared illegal, null and void, the assessment by the city, in 1879, for municipal taxation for the year 1880, at the rate of fifteen mills, as violative of the Constitution of 1879, and the limitation therein declared.

The city, in its answer, asserts its right to collect the taxes levied under the assessment made in December, 1879, at the rate of fifteen mills on the dollar, and that the taxes thus levied include:

1st. The interest tax on the bonded debt of the city, under the act and ordinances known as the premium bond plan.

2d. The tax imposed for the maintenance of the schools.

3d. The tax for municipal purposes, such as police, lighting, improvements, salaries, repairs, care of insane, and generally for the support and administration of the city government.

It was further averred that the taxes were levied with reference to budgets of receipts and expenses duly prepared, under ordinances mentioned, adopted pursuant to the city charter, and amendments thereto, which ordinances were complete and in full force from and after the 23d of December, 1879. It was denied that the said assessment, and the taxes assessed, were affected by any article of the Constitution of 1879, or by any act of the Legislature passed subsequent to its adoption, relied on as supporting the pretensions of the plaintiffs. And it was averred that if any article of the State Constitution, or any legislative act, could be construed as destroying said assessment, or reducing said fifteen mill tax, it was violative of the Constitution of the United States, forbidding the passage of any law impairing the obligation of contracts.

Finally, it was alleged that, for the necessary expenses of administering the city government, a tax of at least ten mills was required, and that the balance of the tax, five mills, though insufficient for the purpose, was necessary for the support of the schools and the interest on the bonded debt.

Judgment was prayed for in reconvention in favor of the city against each of the plaintiffs for the amount of taxes assessed against them respectively, under the assessment of 1879, with costs and interest, which several amounts are specifically set forth in the answer.

Judgment was rendered by the lower court, prohibiting the collection of a greater tax than ten mills, and annulling the assessment beyond that rate.

From this judgment the city has appealed, and the plaintiffs have asked an amendment of the judgment, declaring the entire assessment null and void.

6

The conclusions we have arrived at after a thorough review of the issues presented by the record, dispense us from the necessity of considering and discussing *seriatim* the several interesting constitutional questions involved. The main question presented is whether the city authorities can be compelled to accept ten mills in full payment of the city's taxes for 1880.

This question is not altogether a new one. In the case of the State *ex rel.* Lucas E. Moore vs. City, this same tax of fifteen mills, which had then been levied by the city, was under consideration, and the issue presented in that case with reference to this tax was substantially the same now before us.

In that case as in this the limitation embraced in article 209 of the Constitution of 1879, was relied on as a bar to the levy by the city of a tax for any purpose exceeding ten mills; and we were asked, in case we should decide that the bonds sued on in that case constituted a valid contract, entitling the holders of them to the tax stipulated thereby, to restrain the city within the limit of ten mills, and to compel her to appropriate out of the ten mills so much as might be necessary to satisfy the claim of the creditor. This we refused to do. The reasons for that refusal were stated in the decision, which were in substance, that the necessary expenses of the city government should be paid out of the taxes levied; that such was the intent of the Constitution, and we declined to say what were the necessary expenses of such administration, for the reason that the determination of this question was a legislative and not a judicial function, and that neither the Constitution, apart from the ten mill limitation, nor any law of the State, had defined and fixed the measure of such expenses. And we further declared that if we should compel the five mills to be levied by the terms of the contract for the payment of the interest on these bonds, to be taken out of the ten mills, we would then judicially limit the necessary expenses of the city to five mills. That on the same principle this or another court might direct the remaining five mills to be applied to the satisfaction of other contract obligations, and the city would thus be deprived of all means whatever for the support of its government, and the corporation thereby practically destroyed, and the inhabitants of the city remitted to anarchy and chaos; results which, it is self-evident, the framers of the Constitution never contemplated, and which the very terms of the instrument show were never intended.

We, therefore, decided in the plainest terms, that we could not and would not interfere with the discretion of the municipal legislature in determining the amount required for the necessary expenses of the city government, and in appropriating thereto a sufficient amount of its revenues derived from taxation not exceeding ten mills.

We further held that the power and duty of the city to levy the tax demanded in that case were derived, not from the Constitution of 1879, but from antecedent legislative authority, validly conferred, entering into and forming part of a contract so protected by the Constitution of the United States, that it could not be revoked or impaired, but would continue to exist independently of the State Constitution, and even had that Constitution forbidden the levying of any tax whatever to pay the debt.

With these views we maintained the levy of the tax, though in excess of the ten mills already appropriated to the support of the city government. In doing so, we recognized the perfect liberty of the city authorities to reduce the estimate of expenses and the appropriations therefor, but expressly disclaimed any authority to compel them to do so.

The record in the present case shows that the city government has not altered its budget in this respect. On the contrary, it abounds with evidence to show that no reduction could be made, and that the appropriations made are even inadequate for an efficient administration of the government.

When, therefore, the plaintiffs herein ask us to compel the city to accept ten mills in full settlement of their taxes, it is clear that they demand we should do one of two things, viz : either to remit the five mill tax ordered to be levied in the Lucas E. Moore case, and the two mill tax levied under the judgment of the Circuit Court of the United States, or to reduce the tax levied for the expenses of the city government down to three mills.

The first, it is plain, we could not do, because the judgment in the Moore case is final, and not open to recall, and the judgment of the U. S. Circuit Court is not subject to our control.

To grant the alternative demand, and confine, by the authority of our decree, the city expenses to three mills, would involve the reversal of the opinion in the Moore case upon a point in which there was no express dissent on the part of any member of this Court, that is, touching the authority of this Court to control the discretion of the City Council in relation to the amount required to defray the expenses of the city government.

With the questions determined in the case referred to, we have nothing to do in this case, save and except with the construction of article 209 of the present Constitution of the State. No question has ever impressed us with a graver sense of responsibility, growing out of the magnitude of the interests which its determination involves, and we have, therefore, welcomed the opportunity of a further consideration touching the proper effect and construction of the article in question,

and after listening with profound attention to the able arguments of the learned counsel have, with great deliberation, reviewed and reconsidered the entire subject.

If the power of taxation possessed by the City of New Orleans was confined to that granted by the Constitution of 1879, the question presented would be free from difficulty. But, as already indicated, the power of taxation required to meet the antecedent contract obligations of the city is not derived from and controlled by that Constitution. It was derived from valid legislative authority existing, or created at the time of such contracts, entering into and forming part of those contracts, and incapable of being affected or destroyed by any action of the State, without violating that clause of the Federal Constitution which forbids any such State action as would impair the obligation of contracts. This constitutional inhibition is the paramount law of the land on this subject, to which the State government, in all its departments, and all subordinate authorities within the State, must conform, and against which the fundamental law of the State, declared in its Constitution, is as powerless and ineffective as the enactments of a legislature or the ordinances of a municipal corporation.

The Supreme Court of the United States, recently and correctly, declared : "It is a fundamental principle in our system of complex national polity, that the Constitution, laws and treaties of the United States are as much part of the laws of every State as its own local laws and Constitution." 100 U. S. 584.

Although we are the creatures of the Constitution of the State, the judicial trust confided to us embraces a faithful administration of all the laws of the land ; and our duty, as well as our solemn oaths, bind us to obey equally the Constitution of the United States and the Constitution of the State.

We deem it useless to cite authorities to sustain these propositions. It will be conceded that such is the settled jurisprudence of the Supreme Court of the United States, which has been followed and adopted by the courts of every other State in the Union.

We have not overlooked the appeal made to us, to disregard and override the interpretation which has been placed upon the Constitution of the United States by the Supreme Court of the United States, not in a single decision, but by a long series of decisions, stretching back to the days of Chief Justice Marshall, and sanctified by the concurrence of judges representing every school of constitutional construction. To this appeal we are bound to close our ears. Between the highest Federal tribunal and the highest courts of the several States there exists a wholesome comity, under which the Federal courts accept, as binding upon them, the construction placed by the supreme tribunals of the

States upon their own constitutions and statutes ; and, *per contra*, it is justly due that the State courts should pay equal regard to the adjudications of the Federal Supreme Court upon the Federal Constitution.

The States are deeply interested in the preservation of this comity, because, while the Federal Supreme Court, in the exercise of its appellate jurisdiction, can enforce its construction of the Federal Constitution and laws, even in defiance of the State courts, the latter have only the principle of voluntary comity to depend on, in order to secure the performance of the correlative duty of the Federal courts.

We, by no means, bind ourselves to a slavish adherence to Federal authority, if such should sanction flagrant usurpations repugnant to our consciences ; but we find no difficulty of this kind in our way in the matter now under consideration.

From this it appears that the City of New Orleans possesses powers of taxation derived from entirely different sources, viz.:

First. The power to levy a tax not exceeding ten mills, derived from and entirely controlled by the State Constitution of 1879.

Second. The power to levy taxes to satisfy its antecedent contract obligations, derived from valid legislative authority existing at the date of the contracts, incorporated therein, and protected and continued in force, independently of the will of the State, by the Constitution of the United States.

When, therefore, as in the Folsom case, a creditor of the city, entitled to the tax claimed under the law as it existed when his debt originated, but whose rights were not founded on a contract, and, therefore, not protected by the Constitution of the United States, appeared before us demanding a mandamus to compel the city to levy a tax in excess of ten mills, we pointed to the Constitution of 1879, and said to him: "That Constitution has destroyed your right; it had the power to destroy it, because, not being based on a contract, it was not protected by the Constitution of the United States. We can give you no relief."

But when, as in the Moore case, a contract creditor of the city demanded a tax guaranteed by his contract, we looked at his rights as fixed by the contract, and said : "This right is protected in its integrity by the Constitution of the United States; it exists, and must be enforced without regard to any provision of the State Constitution of 1879, and we must, therefore, grant him the relief asked."

Whatever else may be said of these decisions, it must be admitted that, thus far, they are not inconsistent.

It is claimed, however, that as we declared in the Folsom case, that the provision of the State Constitution must have effect against all rights not protected by the Constitution of the United States, therefore it must have effect to reduce, or, if need be, destroy the right of the city

to pay its necessary administration expenses out of its tax revenue, such right not being within the protection of the Constitution of the United States.

To this we answer :

1st.  The text of the decisions in both the Moore and Folsom cases shows that those *dicta* were applied to rights claimed against the City of New Orleans outside of and beyond the limitation imposed by the Constitution of 1879, and not to rights claimed by the city *under* and *within* those limitations.

2d.  If it were true that the rights of contract creditors and of the city were both controlled by the ten mills limitation of the Constitution of 1879, and were, therefore, exclusive of each other, so that they could not co-exist, it might logically follow, that the allowance out of the ten mills of a certain portion to contract creditors, would operate to reduce to that extent the amount allowed for the expenses of the city government.  We have, however, shown that such is not the case.  That the rights of contract creditors are not controlled by that limitation, and are not based on the Constitution of 1879, nor derived therefrom; that the allowance of the tax required to meet the demands of these creditors, does not, necessarily, come out of the ten mills authorized by the Constitution, and does not, therefore, exclude or conflict with the requirements of the city for her necessary alimony; and that even if the city should be allowed the whole ten mills for the support of her government, it would not destroy or affect the right of contract creditors to claim the additional tax necessary for the satisfaction of their debts.

3d.  We held that it was not the intention of the Constitution, in any event, to deprive the city of the right to apply such portion of the ten mills to the support of the city government as might be found necessary by the municipal legislature in the exercise of the discretion confided to it.  Such a proposition seems to us almost too clear for argument.  It is only necessary to refer to the objects intended to be accomplished and the purposes to be carried out by a municipal corporation, to make it apparent to every one.

The object of the creation of such a corporation is solely to promote the well-being of the citizens who are subject to it.  Its charter contemplates and provides for all measures that are necessary to promote this great end, such as a proper police for the establishment of public order, suppression of crime and the administration of justice, the construction and maintenance of wharves and public works for the purposes of commerce, drainage, and all other sanitary provisions to ensure the public health, the lighting of the streets and the extinguishment of fires, and all other measures conducive to the security of life and property, and promotion of the welfare and prosperity of the

Saloy et al. vs. City of New Orleans.

people. Judge Dillon has more clearly and fully defined these objects when he says :

"Municipal corporations are instituted by the supreme authority of the State for the public good. They exercise, by delegation from the Legislature, a portion of the sovereign power. The main object of their creation is to act as administrative agencies for the State, and to provide for the police and local government of designated civil divisions of its territory. To this end they are invested with governmental powers and charged with civil, political and municipal duties. To enable them, beneficially, to exercise these powers and discharge their duties, they are clothed with the authority to raise revenues by taxation and in other modes, as by fines and penalties. The revenue of the public corporation is the essential means by which it is enabled to perform its appointed work. Deprived of its regular and adequate supply of revenue, such a corporation is practically destroyed and the very ends of its creation thwarted."

Dillon, Mun. Cor., 64.

When we apply these principles to a great commercial metropolis, like the City of New Orleans, with its hundreds of thousands of inhabitants and its varied interests, how these objects rise in importance and these great and benign purposes of city charters and municipal corporations swell in magnitude! It was to subserve these great interests and purposes, and not merely to pay debts, that public corporations are established. To carry out these objects the power of taxation is essential. Without such power and the revenue it supplies the corporation dies. Unless its existence is insured and its capacities and resources kept alive, it cannot pay its debts. Thus, the first and paramount consideration, both as relates to the inhabitants of a city and its creditors, is the proper alimony for its support.

The idea that a limitation of municipal taxation could ever exclude the application of its revenues to an extent necessary to the administration of its government, is entirely unsupported by authority. Nor is it a new question in the jurisprudence of this State. This precise issue was presented and passed on in the case of Shields vs. Pipes, 31 A. 765.

The facts of that case were substantially as follows:

Under a law of the State, passed in 1869, one Peter Young was entitled to a special tax to pay a judgment recovered by him against the parish of Concordia. Subsequently the Legislature passed Act No. 96 of 1877. The 103d section of this act provided "that no parish tax * * * shall, for any one year, *for all purposes,* exceed the rate of one per cent. on the assessed value ; and no judgment tax shall be levied *beyond the above limit;* the intent thereof being to limit parochial taxa-

tion throughout the State to a *minimum* of one per cent., and to repeal all general laws authorizing the levy of a special judgment tax."

It will not be disputed that the power of the Legislature to reduce and limit the alimony of a parish or municipal corporation is as complete as that of a constitutional convention. It will be admitted, too, that the language of the legislative act above quoted is much stronger and more explicit in confining all power of taxation, whether for parochial alimony or for judgment taxes, within the limit of ten mills, than is the language of article 209 of the Constitution.

Notwithstanding this act, the police jury levied a tax of ten mills for parochial expenses, and levied an additional tax of more than ten mills to pay judgments.

The tax collector was proceeding to collect these taxes, when Shields, a taxpayer, alleging that the ordinance in question and proceedings of the tax collector were illegal, because violative of the statute referred to, that he had tendered to the tax collector ten mills in payment of his taxes, and that there was no authority for the tax collector to demand more for any purpose, prayed for an injunction to prevent the tax collector from collecting any additional tax beyond the ten mills.

To this the tax collector responded:

1. That the tax of ten mills is not more than sufficient to pay the current expenses of the parish.

2. That the Act of 1869 was in force at the time the judgment was rendered.

3. That the Act of 1877 is unconstitutional and without effect as to the tax levied to pay the judgment.

Thus the parallel between that case and this is complete.

This Court in that case quoted the article of the Constitution of the United States prohibiting a State from impairing the obligation of a contract, and the article of the State Constitution protecting vested rights, and said : "To apply the Act of 1877 to these pre-existing judgments and the vested rights resulting from them, would be to violate the letter and spirit of these constitutional provisions;" and it therefore held, as we held in the Moore case, with respect to contract creditors, that the judgment creditors were entitled to their tax.

But did the Court say, as we are asked to say in this case, that the judgment tax must be paid out of the ten mills to which parochial taxation was limited by the Act of 1877, and that act must have its effect upon and against the right of the parish to provide for its current expenses ? Not so.

Mr. Justice Marr, as the organ of an unanimous Court, in his able and elaborate opinion, said :

"At the time when these judgments were rendered, the only means

of enforcing the judgment was that prescribed by the Act of 1869. · When the Legislature subsequently repealed all general laws authorizing the levy of a special judgment tax, and fixed the *maximum* of parochial taxation at ten mills, a rate which it was admitted, in this case, *was not more than sufficient to pay current expenses of the parish,* it either intended that this law should apply only to judgments rendered in future, or it attempted to deprive these judgment creditors of all remedy and to divest the rights vested in them by the judgments."

This the Court held that it could not do, and affirmed the judgment of the lower court dissolving the injunction, thus rejecting the idea that such a construction could be placed upon the legislative limitation as to require the judgment tax to be taken out of the ten mills, and thereby deprive the parish of all means of paying its current expenses.

This decision is sanctioned and sustained by the highest authority, and has our entire concurrence. Van Hoffman vs. City of Quincy, 4 Wall. 535; City of Muscatine vs. Batz, 8 Wall. 575.

The next and only question left for our consideration is in regard to the validity of the assessment of property for city taxes made in December, 1879. The judge *a quo* maintained the validity of this assessment, though deciding that only ten mills could be collected under it. We concur in his conclusions on this point, declaring the assessment legal and valid, and adopt his reasons therefor, given in his able and elaborate opinion. The same issue is before us in the case of the succession of Dupuy; and, in the opinion we shall render in that case, will take occasion to present our reasons more fully.

While mere considerations of public interest and convenience could exercise no controlling influence over our decision of purely legal questions, it is yet a matter of gratification to us to feel that in our determination of the grave questions submitted to us we shall conserve the true interests of all classes of people. We cannot conceive that it could be to the interest of any class that the City of New Orleans should be deprived of the revenues necessary to enable it to perform the functions of government, and carry out the purposes for which it was created.

Certain it is that if these functions and purposes were abandoned, every interest of society would suffer. A city without police, without lights, without a fire department, without schools, without repairs and maintenance of streets and wharves, without prisons for criminals, without places of refuge for the insane and unfortunate, without, in fine, any of those accessories of municipal organization which alone render possible the living together of vast congregations of people, would be a place not to live in, but to fly from, as if it were infected with the deadliest pestilence.

We are further consoled by the reflection, that if, as is contended by some, the appropriations to these necessary purposes are excessive, although the remedy does not lie within our control, it might be sought at the hands of the Legislature, which has full power to restrain municipal expenditures for alimony within such limits as, in its wisdom, may seem fit.

Entertaining these views covering the issues involved in the case, supported, as we believe them to be, by incontrovertible authority, State and Federal, we conclude that the tax of fifteen mills complained of is a legal and valid tax, and must be paid in full; and that the reconventional demand of the city, requiring the payment by the plaintiffs, respectively, of the several amounts due by them for taxes, as set forth in the answer, must be sustained.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and, proceeding to render such judgment as should have been rendered by the lower court, it is ordered, adjudged and decreed that the demand of the plaintiffs to be discharged from the municipal taxes for the year 1880, assessed against them respectively, upon the payment by them of ten mills on said assessment, and to have annulled the said assessment for city taxes, made in December, 1879, be rejected; and it is further ordered, adjudged and decreed that the City of New Orleans, on her reconventional demand, recover of the plaintiffs as follows, to-wit:

B. Saloy, the sum of......................................$ 1,797 00
J. Bayle, the sum of......................................  202 50
Mrs. J. Bayle, the sum of.................................   24 00
B. Cestin, the sum of.....................................  105 00
John Friedericks, the sum of..............................  552 00
E. Seignouret, the sum of.................................   15 00
J. A. Seignouret, the sum of..............................  127 50

with ten per cent. interest per annum on said several sums, from the 31st of March, 1880, till paid, and that the privilege and mortgage on the respective properties assessed be recognized; the costs of both Courts to be paid by the plaintiffs and appellants.

### DISSENTING OPINION.

BERMUDEZ, C. J.   The question presented by the plaintiffs for solution in this case is:

Whether the City of New Orleans can be forced to receive *ten* mills on the dollar of the assessed value of property within her limits, in full payment of all municipal taxes due thereon, the city contending that the *ten* mills offered would be altogether insufficient, and that *fifteen*

mills are indispensably necessary to meet her unavoidable expenses of administration and the payment of her creditors, in the manner in which they are entitled to be paid, under the law and the adjudications of courts of justice.

The record does not disclose any intervention on the part of any of such creditors. It is clear, therefore, that whatever judgment may be rendered in this suit will not, in any degree, affect or conclude them, or any one of them.

The City of New Orleans is a municipal corporation, created by the Legislature of this State.

She enjoys only those rights which have been expressly delegated to her, or which are a necessary incident of her existence. She exercises the power of taxation *because* of such delegation. That power the sovereign authority can recall whenever, in its wisdom, it may deem proper *or necessary to do so for the common good*, but subject to the rights which third parties may have lawfully acquired by its exercise.

When the power is withdrawn, and the obligation of valid contracts may be thereby impaired, and, the municipal authorities which exercised that power continue in existence, the acquired rights can be enforced by compelling those authorities to exercise such powers in favor of the complainants. The theory denouncing judicial taxation can receive a legitimate application only where the judiciary, *in the absence of any law or authority*, assumes to levy, collect and apply taxes.

However, a circumstance may arise, in a case of *most dire necessity*, when the taxing authorities may, by sovereign behest, cease to exist, and none other substituted to them, or where the State itself may formally resume the exclusive power of taxation previously delegated. In such last case, what would be the fate of the rights of creditors, even if acquired under legal contracts shielded by the Federal Constitution?

It is patent in this case that, although the taxing authorities have not been abolished, their right to levy and collect taxes has been restricted by constitutional language couched in the negative, and, *therefore, retroactive* and *prohibitive* to *ten* mills on the dollar.

The legality of the curtailment of such power cannot be questioned by the municipal corporation contradictorily with the taxpayers only, in the absence of any creditor, who alone can do so.

Whatever evidence was admitted to show the wants of the city, or the amount of her indebtedness, is not entitled to consideration, because not introduced contradictorily with any creditor. They are not before us. We hear no complaint from the bondholders. It does not belong to the city vicariously to champion and enforce their contract and protect their rights. Her duty is to submit to the constitutional requirement.

It may well be that the ten mills are not sufficient to provide for the municipal administrative expenditures, which are entitled to priority, and for the satisfaction of the creditors, but its sufficiency or insufficiency cannot be agitated on the issues presented, and between the parties before the Court.

The municipal expenditures must be restricted in any case to the ten mills, and are, to that extent, only subject to the control of the Court.

The rights of the creditors who may have valid contracts, protected by the United States Constitution, could not be impaired by the article relied on by the plaintiffs. It would seem that it is not, until the authorities empowered to tax shall have been suppressed, and the State shall have resumed the power of taxation, and shall have regulated the same, that the article in question, intended for public relief, can receive a full, practical and indisputable effect.

It may well be that the Convention contemplated that this article would prove effectual as to the City of New Orleans, contingent upon the exercise by the Legislature of the plenary powers expressly conferred by article 254.

I think the judgment appealed from, for those reasons, should be affirmed.

---

## DISSENTING OPINION.

POCHÉ, J. I regret the necessity of dissenting from the opinion of the majority of the Court in this case, but I am impelled thereto by my solemn convictions. Plaintiffs, citizens and taxpayers of the State, invoke the aid of the judiciary power, created under the Constitution of 1879, to enforce a provision of that Constitution, defining a limit to the taxable power of the City of New Orleans as a municipal corporation.

In article 209 of the Constitution, it is provided that "no parish or municipal tax, *for all purposes whatsoever*, shall exceed ten mills on the dollar of valuation." The City of New Orleans having levied, and having attempted to collect, for the year 1880, a tax of fifteen mills on the dollar, plaintiffs pray that she be enjoined and limited to collect a tax of only ten mills.

The city, thus summoned to obey the mandate of the paramount law of the State, answers that the rate of taxation limited by the Constitution curtails her revenue to unreasonable proportions; that the proceeds of the ten mill tax is barely sufficient to meet her current expenses, and that she is warranted in raising an additional tax of at least five mills to meet the payment of her contract debts and interests on her bonded indebtedness. In this case no contract creditor asks the enforcement of obligations for which the city refuses to make adequate pro-

visions by taxation or otherwise. And, in my opinion, the theory, resting on the adjudications of the Federal and other Courts, annihilating all State action or legislation tending to impair the obligation of contracts, has no application to this cause under the pleadings and between the present parties. I find no cases either in the Federal or State jurisprudence where the power of a court has been exercised for compulsory taxation by a municipal corporation to meet the payment of its contract debts *in general*. All adjudications in such cases have been predicated on the complaint of a particular creditor after unsuccessful efforts to obtain relief from the municipal taxing power or authority.

I respectfully differ with my learned brothers in their position that the City of New Orleans derives her taxing power from any other source than the present Constitution of the State, and I hold that any Act of the Legislature, either antecedent or subsequent to the Constitution, granting a more extensive taxing power than that conferred and circumscribed by the Constitution, is either inconsistent with, or violative of, the organic law, and therefore null and void.

If, therefore, under an isolated issue, as presented by the pleadings in this case, this Court attempts to authorize a levy of greater taxes than limited in the Constitution, it inaugurates judicial legislation, which practically ignores the very power which created us, and whose authority and sovereignty is omnipotent in the State, in so far as it does not conflict with the Constitution of the United States.

When a proper case is presented by a contract creditor of any municipal corporation in the State, who is refused a compliance with its obligations by the corporation, claiming immunity under the constitutional limitation, the Court should then interpret the alleged impairing of the obligation of the contract by the constitutional limitation to municipal taxes; but no such issue is presented in this case, and should not be injected into it. Citizens of the State invoke our aid to enforce a constitutional inhibition enacted for their protection, and it is our bounden constitutional duty to come to their relief, especially as no creditor of the city could be concluded in any contract right which he may have, and which is protected by the Federal Constitution.

In my humble opinion, the error committed by the majority consists in treating this case as though all the contract creditors of the city were before us, judicially urging their vested right to the proposed tax, and requiring a decree avoiding a legislative or constitutional provision impairing the obligation of their contracts, when, under the pleadings, the issue is confined to the taxing power on the one hand and the taxpayer on the other, and the sole question presented for solution is the interpretation and enforcement of a Constitutional safeguard.

For these reasons, which the press of official labors does not per-

mit me to elaborate, I think that the judgment of the lower court should have been affirmed.

---

## ON APPLICATION FOR REHEARING.

FENNER, J.    Attempt is made, in the brief in support of this application, to show that our decision herein is in conflict with the principles enunciated by the Supreme Court of the United States in the case of Meriweather, Receiver of Memphis, vs. Garrett *et al.*, recently decided.

We have made it our duty to study, with great care and particularity, the utterances of the Court in that case, including the conclusions of the Court as announced by the Chief Justice, the opinion in support thereof read by Mr. Justice Field, and concurred in by Justices Miller and Bradley, and the dissenting opinion of Mr. Justice Strong, concurred in by Mr. Justice Harlan.

The 149th article of the Constitution of the State required us, in common with all other officers, before entering upon the discharge of our duties, to take an oath to "support the Constitution and laws of the United States and the Constitution and laws of this State."

Where the two Constitutions conflict, it is impossible to give effect to both.

No one questions that, in case of such conflict, the Constitution of the United States is the paramount law, and must prevail.

The idea, advanced by some, that, in denying effect to a provision of the State Constitution, where, in a particular case, it conflicts with the Federal Constitution, we are violating the mandate of the power which created us, is, therefore, utterly without foundation, because the most solemn expression contained in that mandate binds us, by oath, to support the Constitution of the United States.

It is essential to the preservation of any constituted order of government that some final arbiter should be established for the settlement of legal controversies, especially of those fundamental questions involving the meaning and effect of the organic law.

Under our system, the Supreme Court of the United States is established as such arbiter, in all cases involving the construction of the Federal Constitution, as to which it is vested with appellate jurisdiction over this and every other Court.

In our original opinion we indicated, and shall not now recapitulate, the reasons why we felt bound to adopt the settled construction placed upon the Federal Constitution by the highest Federal Court—at least where that construction is not so manifestly usurpative that we could not follow it without violating conscience.

In no doubtful case, however, would we refuse effect to a provision

of our own Constitution on the ground of repugnancy to the Federal Constitution.

Certainly, in no case, where the U. S. Supreme Court had so construed the Federal Constitution as to make it consistent with the State provision, would we hesitate to adopt such construction and maintain the latter.

No candid lawyer will dispute that, in construing that provision of the Federal Constitution forbidding States from passing any law impairing the obligation of contracts, the Supreme Court of the United States has, in repeated decisions, announced and settled the following doctrine, which we state, as nearly as brevity will permit, in the very words of the Court, viz : That where a statute authorized a municipal corporation to issue bonds, and to exercise the power of local taxation in order to pay them, and persons bought and paid value for bonds issued accordingly, this power of taxation is part of the contract, and cannot be withdrawn until the bonds are satisfied; that an attempt to repeal or restrict it by State law is void ; and that unless the corporation imposes and collects the tax in all respects as if the subsequent law had not been passed, it will be compelled to do so by mandamus.   See Van Hoffman vs. Quincy, 4 Wall. 535, and subsequent cases.

Cooley, Const. Lim., p. 292.

We did not originate or create this interpretation. , We accepted it from the hands of the highest expounder of the Federal Constitution, vested with appellate jurisdiction over this Court on such questions, and thus rendering opposition on our part, even had we been disposed to offer it, foolish, because utterly vain.

This is no new interpretation, sprung, as a surprise, upon the State and city.   It existed as a settled and universally recognized constitutional doctrine at the moment when the State delegated to the city the taxing power now under consideration, as the inducement to the contracts predicated thereon.

It so existed at the moment when the sovereign will of the State, as expressed in its Constitution, required its judiciary to take an oath to support the Constitution of the United States.

The arguments against this doctrine, though now attractively and impressively formulated by skillful advocates, have in them nothing in the slightest degree new.   They were considered and disposed of when the doctrine was adopted, and so often since that it was not supposed they could be the subject of further controversy.

If it were true, as is now contended by counsel, that the Supreme Court of the United States, in its decision in the Memphis case, had abandoned or modified the foregoing doctrine and had adopted another consistent with the right of the State to withdraw from an existing

municipal corporation the power of taxation, even though forming part of a contract, we should not hesitate a moment to follow it, and would reverse the decision herein rendered.

A close study of that case, however, convinces us that neither the Court, nor any member thereof, has even intimated the slightest intention of abandoning or modifying the settled doctrine now under consideration.

It is to be borne in mind, that the only propositions which are entitled to be considered as the expression of the Court, are the conclusions announced by Chief Justice Waite, as its organ, and in these nothing can be discovered having the slightest bearing upon the question now under consideration.

The opinion read by Justice Field in behalf of himself and his associates, Miller and Bradley—luminous, learned and thoroughly sound as we believe it to be—is yet but the expression of those three judges, and cannot be accepted as the opinion of the Court. That opinion, however, does not, in the slightest degree, countenance the inferences sought here to be deduced from it. Those inferences can be supported only by isolating general expressions from their context and disconnecting them from the limitations expressly placed upon their import in the opinion itself.

Thus, in treating of the legislative right to alter, abridge, or withdraw powers of taxation and all other powers delegated to municipal corporations, Justice Field is careful to recognize the existence of exceptions to this general right. He uses these words : "We say, generally, for there are some exceptions, where the tax provided is so connected with a contract, as the inducement for its execution, that the courts will hold the repeal of the law invalid as impairing the obligation of contracts. It is not of such taxes, constituting the consideration of contracts, that we are speaking," etc.

In another part of his opinion he says : "The Federal judiciary has unhesitatingly brushed aside all legislation of the State impairing the obligation of contracts. When a tax has been authorized by law to meet them, it has compelled the officers of assessment to proceed and levy the tax, and the officers of collection to proceed and collect it, and apply the proceeds. In some instances, where the tax was the inducement and consideration of the contract, all attempts at its repeal have been held invalid."

These extracts are surely sufficient to demonstrate that the learned participants in this opinion maintain, in full vigor, the settled doctrine that the power of taxation once conferred on a municipal corporation by competent legislative authority, as the inducement and consideration of a contract, cannot be withdrawn or repealed by any subsequent legisla-

tion of the State, so long as the corporation exists and the contract remains unfulfilled.

But when, as in the Memphis case, the charter of the municipal corporation has been repealed, and its corporate officers have, thereby, been abolished and destroyed, entirely new and different questions present themselves, and it was with such questions that the Court was most engaged in the Memphis case. The opinions expressed and conclusions announced by the Court are confined, in their proper application, to the case of an extinct corporation, and are apt to mislead when extended to the entirely different case of an existing corporation. The important questions involved had reference, not so much to the *rights* of contract creditors, as to their *remedies*.

The Court is unanimous on three of the propositions announced by the Chief Justice, viz. :

1st. Property held for public uses cannot be subjected to the payment of municipal debts.

2nd. Private property of individuals cannot be subjected to the payment of municipal debts except through taxation.

3rd. The power of taxation is legislative and cannot be exercised otherwise than under the authority of the Legislature.

The opinion of Justice Field fully explains what is meant by this last proposition as applied to municipal corporations. It means that taxes can only be levied, (1) in virtue of existing legislative authority, and (2) by officers constituted and authorized by law to levy taxes.

Courts have no power, in any case, to levy taxes. The limit of judicial power over the subject is to require and compel duly constituted taxing officers, amenable to process, to obey existing law by levying a tax required thereby.

If there is no law authorizing the tax, or if, there being a law, there are no officers amenable to judicial process to execute it, then, in the language of Justice Field, "there is nothing upon which the Courts can act."

The legislative power of the State is powerless, as we have seen, and as emphatically recognized in this very opinion of Justice Field, to impair the obligation of a contract by repealing a tax-law entering into and forming part of such contract ; and, therefore, such law necessarily continues to exist until the contract is fulfilled. As long as there are taxing officers, they owe obedience to such existing law, and the courts may, and, on proper application, must enforce such obedience.

Neither by its constitution, nor by statute, has the legislative power of the State seen fit to repeal the charter of the City of New Orleans, or to abolish or destroy its taxing officers.

The law and the officers thus continuing to exist, no element is

wanting for the application of appropriate judicial remedies, and the taxpayers of New Orleans are not in position to claim the relief extended or suggested in the case of Memphis.

We find nothing in the decision of that case to alter or affect the views expressed by us in our original opinion.

The suggestion that taxes levied under the mandamus of a court is judicial taxation, rests upon an entire misapprehension of the meaning of those terms.

Mr. Justice Field, in his opinion, explains this so clearly that no apology is left for further confusion of ideas on the subject. After explaining that taxes can only be levied by legislative authority, and that courts are powerless to levy them, he says: " The form of procedure cannot change their character. Nor are they different, when levied under writs of mandamus for the payment of judgments, and when levied for the same purpose by statute. The levy in the one case is as much by legislative authority as in the other. The writs of mandamus only require the officers of assessment and collection to obey existing law." The office of the writ of mandamus is to compel officers to perform duties imposed on them by law. It is no more judicial taxation to compel taxing officers to perform the taxing duties imposed by law, than it is judicial legislation to compel any other officer to perform any other legal duties.

In proceeding to lay down the general doctrine that, taxes "being levied by the authority of the Legislature, they can be altered, postponed or released at its pleasure," Judge Field is careful to except, from the operation of this general doctrine, the case where, he says, " the tax provided is so connected with a contract that the courts will hold the repeal of the law to be invalid, as impairing the obligation of the contract."

In article 209 of her Constitution the State of Louisiana has interposed, between the City of New Orleans and her contract creditors, only the shadow of the mighty shield of her sovereignty. Shadows are powerless to protect. The Memphis decision is a portentous reminder that the shadow is cast by the shield itself, which exists, massive and impenetrable.

Another ground assigned for rehearing is that there is error in the judgment on the reconventional demand of the city in condemning the plaintiffs to pay ten per cent interest, from March 31st, on the taxes due.

The rate of interest chargeable on delinquent taxes was fixed at ten per cent by section 9 of Act No. 48 of 1871, which same act fixed the date of exigibility as July 1st of the current year. The Act No. 41 of 1874 simply changed the date of exigibility to March 31st. It did not alter or affect the rate of interest theretofore established, nor did it

prevent that interest running, under the general law of the State, from the time when the taxes became due and exigible as therein fixed. Such, we believe to have been the intention of the law, and such has been the practicable operation given to it, from that day to the present time. This construction receives additional sanction from the references to "existing laws as to the time when city taxes became due and as to the interest thereon", contained in section 97 of Act 96 of 1877, and section 14 of Act No. 9 of Ex. Sess. 1878.

Article 210 of the Constitution providing a summary remedy, without suit, for the enforcement of taxes "at the expiration of the year in which they are due," cannot be construed as repealing existing laws fixing the period at which city taxes become due and allowing interest from that date. The article presents no inconsistency with those laws. Even if the remedy provided in the article were exclusive of all others, the postponement of the exercise of that remedy to the end of the year would not necessarily involve a like postponement of the time at which the taxes become due or of the interest penalty provided for non-payment at that time. On the contrary, the postponement of the remedy would furnish additional reason for the exaction of the penalty, since the latter would then be the only motive to prevent delinquency.

We express no opinion as to whether the remedy provided in the article is exclusive or not, because the question was not raised or argued on the original hearing, and its decision is not necessary in this case.

To the city's reconventional demand, no exception was taken in the lower court, and no objection was urged even in this Court until after judgment.

Such an exception should have been urged *in limine*. A party may not take the chances of a decision in his favor on a voluntary submission of the merits of the cause, and then escape the effect of an adverse decision, upon such a plea.

The rehearing is refused.

--------

POCHÉ, J. Referring to the reasons assigned in my dissenting opinion in this case, I think that a rehearing should be granted, and therefore dissent from the opinion of the majority, refusing the rehearing prayed for.

The Chief Justice concurs in the above.