In the Matter of the Cancellation of the Bonds of A. H. Isaacson et al.

## II.

## No. 8614.

IN THE MATTER OF THE CANCELLATION OF THE BONDS OF A. H. ISAACSON ET AL., EX-ADMINISTRATORS OF CITY OF NEW ORLEANS.

Members of the City Council of New Orleans incur no personal liability to a judgment creditor of the city for a failure to levy a tax or provide in the annual budget for payment of the judgment, where, at the time, there exists a legal limitation on the taxing power of the city, by the effect of which a designated portion of the taxes authorized

to be levied, is to be applied towards paying certain bonded indebtedness of the city, and the residue within the limitation. is appropriated by the Council to the alimony of the city, except a small amount reserved for judgments, which amount was exhausted by judgments prior in registry to the suing creditor, and where the creditor has not resorted to a mandamus before or after the a loption of the budget to compel the municipal authorities to provide for the payment of his judgment   The Council in such case was not bound to trench upon the funds reserved for the alimony of the city to pay said judgment.   The making of the estimate for the necessary expenses of the city government involves a legislative discretion, with which courts will not, unless under exceptional conditions, interfere.·

Judgment affirmed.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

*G. L. Bright* for Opponent and Appellant.

*E. H. McCaleb* and *S. P. Blanc, contra.*

The opinion of the Court was delivered by

TODD, J.   A. H. Isaacson, Administrator of Finance; John Glynn, Jr., Administrator of Accounts; Washington Marks, Administrator of Assessments; J. Henry Behan, Administrator of Commerce; Patrick Mealey, Administrator of Police; and E. R. Chevalley, Administrator of Waterworks and Public Buildings, of the city of New Orleans; their terms of office dating from November, 1878, to November 15, 1880, applied to the Governor of the State for the cancellation of their official bonds, under the provisions of Act No. 15, approved February 24, 1877.

L. F. Barrett, a judgment creditor of the city of New Orleans, opposed the cancellation of the bonds and the discharge of the parties, on grounds and for reasons substantially as follows:

He alleges that the *fifth section of the Act No. 7, Extra Session of* 1870, *p.* 31, provides that every administrator of the city of New Orleans, shall give bond; and *section No.* 29, that he shall give bond in the sum of $25,000, for the faithful performance of his duties.   And section No. 19 of the same act directs that the Council composed of said administrators, shall, once in every twelve months, before passing and deciding upon the amount of taxes and licenses to be assessed for the following year, cause to be made out a *detail estimate,* exhibiting the various items of the liabilities and expenditures, and to impose a tax not exceeding $1 75 on every $100 of valuation, which, together with the revenues of the city, shall be used to meet the estimated liabilities and expenditures of the city, as aforesaid; that *section 2 of Act No. 5 of* 1870, *Extra Session,*

p. 11, provides that hereafter, no writ of execution or *fieri facias* shall issue from any of the courts against the city of New Orleans, to enforce the payment of any judgment for money against the city of New Orleans, but final judgment against the city of New Orleans, condemning said corporation to pay any sums in money when the same shall become executory, shall have the effect in law of establishing and fixing the amount of the plaintiff's demand against said corporation, and the plaintiff may cause a certified copy of the said judgment, together with a copy of plaintiff's petition, and the defendant's answer in the cause in which such judgment is rendered, together with the certificate of the clerk of said court, that such judgment is final and executory, to be filed in the office of the Comptroller of said city; and it shall be the duty of the Comptroller or auditing officer of said corporation, to receive the same, and cause the same to be registered in his office of the date on which the same shall have been presented, and when so registered, it shall be the duty of the Comptroller to draw warrants on the Treasurer, or disbursing officer of the corporation, for the amount due therein, without any special appropriation of money therefor by the Common Council; and section 3 of the same act provides that in case the amount of money designated in the annual budget, for the payment of judgments against the city of New Orleans, at the date when any judgment against said corporation shall have been final and executory, shall have been exhausted, the Common Council shall have power, if they deem it proper, to appropriate from the money set apart in the budget or annual estimate for contingent expenses, a sufficient sum of money to pay said judgment or judgments; but if no such appropriation be made by the Common Council, then all judgments shall be paid in the order in which they shall be filed and registered in the office of the Comptroller, from the first money next annually set apart for that purpose.

Barrett alleges, that notwithstanding he caused his judgments to be registered, the said administrators have negligently, wilfully and wrongfully failed to comply with the law, and to provide for the payment of his judgments; that his judgments have ever since remained unpaid, and he has been damaged by the administrators to the amount of his judgments. He prays for judgment against them for the full amounts of the judgments he owns against the city of New Orleans.

From a judgment dismissing his opposition, Barrett has appealed.

Barrett's demands are resisted by the ex-officials named on several grounds, the most material of which is the following:

That during their incumbency of the offices mentioned and at the dates when the annual budgets for the city expenditures for the years

In the Matter of the Cancellation of the Bonds of A. H. Isaacson et al.

included in their term of office were made up, there was a limitation of the taxing power of the city to fifteen mills by Act 31 of 1876. That five mills, by the terms of this act, were required to pay certain bonded indebtedness of the city, and the balance necessary for the alimony and current expenses of the city, except a small amount that was appropriated towards paying the judgments against the city, but which were absorbed by judgments preceding the opponent's, in the order of their registry.

The evidence on this point in the record shows that for the years mentioned, there was a general reduction of the expenses of the city, amounting according to the estimates of the witnesses to thirty per cent, and that the appropriation made for the maintenance of the city government was really inadequate for that purpose, leaving the irresistible inference that there was nothing left beyond the amount so provided to be applied to the payment of the judgments. Such being the law and the situation at the time, we are at a loss to discover any ground upon which the members of the Council can be held personally responsible for a failure to provide for the payment of the judgment creditors. There was a limitation on their taxing power imposed by law, which, in the absence of any judicial mandate compelling a different course, they were bound to respect. The question whether such a limitation should be obeyed, even with respect to contract creditors, was a judicial question with the solution of which they were not charged. 34 A. 476. In this instance though the failure to make a sufficient provision for the payment of judgments against the city was apparent from an inspection of the budget, yet this creditor and opponent did not seek to compel the administrators by mandamus to supply the alleged omission. 34 A. 1093. Besides, even had such attempts been made, his success would have depended upon his ability to show that his judgments were founded on contracts made before the legislative limitation on the taxing power referred to was imposed; proof of which fact he has failed to make in the opposition we are now considering. 32 A. 709; Ib. 884.

It is, however, urged in argument by the counsel for the opponent, that it was the duty of the Council to provide for the judgments even out of the amount appropriated or reserved for the alimony of the city.

This question we have before had occasion to consider and have held that, the making the estimate and appropriation for the necessary expenses of the city was a legislative function on the part of the Council, with which the courts would not interfere, so long as legal or constitu-

tional provisions and limitations were observed. 33 A. 79. In this instance the record shows that this discretion was not abused.

We are strongly supported in our views on the question touching the personal liability of ex-officers for acts or omissions charged against them in their official capacities, by the decision of the Supreme Court of the United States, in the case of Dow vs. Humbert, 91 U. S. R. (Otto) 294. In that case it was held that the supervisors of a town which had failed to register a judgment and levy a tax for its payment as provided by a statute of the State, were not responsible to the creditor for the amount of the judgment, but only to nominal damages.

There were other considerations presented by the record which would support the consideration reached by us touching the personal liability of these parties, but the point above discussed is, in our view, decisive of the whole case, and renders the consideration of other questions raised by the pleading or argument unnecessary.

For these reasons we see no cause to disturb the judgment of the lower court, which is affirmed with costs.

Rehearing refused.