UNITED STATES *ex rel.* LOUISIANA CONST. CO. *v.* CITY OF NEW ORLEANS.[1]

*(Circuit Court, E. D. Louisiana.* January 11, 1887.)

1. MUNICIPAL CORPORATION—JUDGMENT AGAINST—REGISTRATION.
    A judgment against the city of New Orleans, reversible only in an appellate court, and not affected by any appeal, either suspensive or devolutive, was within the two years allowed by the United States statute for writ of error, capable of registration under the act of the legislature of Louisiana, No. 5 of 1870, extra session.
2. SAME—CITY OF NEW ORLEANS—ITS ALIMONY.
    The duty of providing for the alimony of the city is lodged in the discretion of the common council, in the constitutional and legal exercise of which the courts may not interfere.

Application for a Writ of *Mandamus* to compel the common council to include relator's judgment within the budget for this year.

*E. Howard McCaleb,* for relator.

*W. H. Rogers,* City Atty., for respondent.

BILLINGS, J. Two points of objection are made by the attorney for the city.

1. That relator's judgment is not final and executory. This objection involves the construction of the act known as No. 5 of the acts of the legislature of Louisiana in 1870. Up to the time of the passage of this act writs of *fieri facias* ran from the state courts against the city of New Orleans. This act abolished that writ, and substituted therefor the registration of the judgment with the comptroller of the city, and payment

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

by appropriation by the common council in the order of registration. Section 1 takes from creditors the right to resort to *mandamus* upon the fiscal officers of the city before judgment. Section 2 prohibits the issuance of executions (writs of *fieri facias*) to enforce the payment of any final judgment against the city "condemning said corporation to pay any sum of money," and provides for their registration. Section 3 provides for the payment of judgments against the city which are "final and executory."

This statute, it is to be observed, took its place among the statutes of the state providing for the payment of money judgments without disturbing or changing the form or enforceability of judgments. It was applicable only to cases in which the city was the debtor. It left judgments in city cases as they had been, and as all other judgments. remained, subject to suspensive and devolutive appeals. Those judgments, which had been final and executory continued so, city judgments as well as all others. There was as to city judgments merely the substitution of one particular means of enforcement or collection for another. The question presented here is whether a judgment reversible only in an appellate court, and not affected by any appeal, either suspensive or devolutive, was, within the two years allowed by the United States statute for writ of error, capable of registration. That an execution could have been issued on such a judgment is not denied. It follows that it equally carries with it the right of registration.

In *Arrowsmith* v. *Durell,* 21 La. Ann. 295, the court holds that even a judgment of the district court in a case which was pending in the appellate court upon a devolutive appeal, and while so pending, had become prescribed. The court in its reasoning meets the question of finality, and while it says such a judgment "is not final in the largest sense of a final judgment," *i. e.*, Civil Code, art. 3522, to maintain a plea of *res judicata*, that nevertheless it is final for the purpose of the running of prescription against it. This is the adoption of the same meaning as is attached to the word "final" in the statutes of congress when they provide that writs of error and appeal may lie from all final judgments of the circuit courts, etc. Rev. St. § 691. It certainly is not necessary to be seriously considered whether a judgment which is of such a character and condition that the legislature has made prescription run against it is not executory in the one solitary mode left by the law for its execution and enforcement. My conclusion, therefore, is that the relator's judgment is, within the meaning of act No. 5 of acts of 1870, final and executory, and was properly registered under that act.

2. What rights has the relator to having his registered judgment paid through the writ asked? The sole question presented in this part of the case is, has the relator the right to have his judgment paid out of the tax within the 10 mills? There is no question in this case of constitutional law. The question may be stated thus: Can the court usurp the discretion which the legislature of the state has vested in the common council, as to the amount within the 10 mills which they must devote to what is termed the alimony of the city?

Reference was made to the case of *Wolff* v. *New Orleans*, 103 U. S. 358. But in that case there was no obstacle coming from a limitation of taxation. The prayer was for a budget or a special tax, and the court maintained a right to a special tax.

In *Carondelet Canal Co.* v. *New Orleans*, 30 La. Ann. 129, the supreme court of this state awarded a *mandamus* to compel the levying of a special tax in the annual budget sufficient to pay relator's and all prior registered judgments. But this case, as I understand it, did not involve any question of limitation of power of taxation, or of controlling the common council in the matter of the government of the city, including provisions for the schools, police, lights, etc., and all the public necessities of civilized communities. But the matter presented here is dealt with, as it arose, in a series of subsequent cases, wherein the court lays down the doctrine that the duty of providing for the alimony of the city is lodged in the discretion of the common council, in the constitutional and legal exercise of which the courts may not interfere.

In *Saloy* v. *City*, 33 La. Ann. 79, where there was a right to a special tax, the question was whether a tender of 10 mills by the tax-payer was sufficient. The court at page 89 say that in a former case the court "rejected the idea that such a construction could be placed upon the legislative limitation as to require the judgment tax to be taken out of the 10 mills, and thereby deprive the parish of all means of paying its current expenses."

In *Re Isaacson*, 36 La. Ann. 56, at page 59, the court says: "This question we have before had occasion to consider, and have held that the making the estimate and appropriation for the necessary expenses of the city was a legislative function on the part of the council, with which the courts could not interfere so long as legal and constitutional provisions and limitations were preserved."

In *Marchand* v. *City*, 37 La. Ann. 15, at page 18, the court says: "The duty [the duty of levying a tax to pay registered judgment] we have held, however, is subordinate to the higher and absolute duty of first providing, out of the revenues applicable to that purpose, for the necessary alimony in support of the city." I think these authorities are a well-considered interpretation of the meaning of the legislation upon the point presented, and furnish a clear guidance for this court. The relator is entitled to have his judgment registered and paid in the order of its priority, so soon as the common council can, consistently with the existing constitutional limitation upon taxation, and after providing for the alimony of the city, provide for the payment of the same.

The judgment will be that the common council be required to include this judgment, in its order of priority according to registration, among the fixed liabilities of the city of New Orleans, which the city must provide means to pay, and that after providing for the items of the alimony of the city they appropriate all the balance of the 10-mill tax leviable this year to or towards the payment of said judgment, in its order of priority, and so on, from year to year, till the said judgment is wholly paid.